IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Application of | ) | |
| | ) | |
| Finserve Group Limited, | ) | C.A. No.: 4:11-mc-2044-RBH |
| | ) | |
| | ) | **O R D E R** |
| For an Order of Judicial Assistance | ) | |
| Pursuant to 28 U.S.C. Section 1782 | ) | |
| | ) | |
| | ) | |

This matter is before the Court on the Application of Finserve Group Limited for an order of judicial assistance pursuant to 28 U.S.C. § 1782. The documents filed with this Court allege that Finserve is an investment company incorporated under the laws of the British Virgin Islands, managed by Vladimir Volpert, a resident of Russia. The affidavit of Mr. Volpert and the Application allege that Finserve agreed to lend Anri Petrosyan, a resident of Myrtle Beach, South Carolina, One Million Dollars ($1,000,000), with $300,000 paid directly to Petrosyan's personal account in the United States, and $700,000 paid to an offshore Bahamian corporation with a bank account in Hungary. The purpose of the loan was for investment in soy beans. Petrosyan is now allegedly in default on the loan.

Under the terms of the Agreement, any disputes are to be resolved by the London Court of International Arbitration (LCIA)[1]. In the Application filed with this Court on September 2, 2011, Finserve stated that it intended to make an application with LCIA by October 1, 2011. The Court has not been advised as to whether such has occurred.

---

[1] Although not included in the filings of Petitioner, the website for the LCIA, www.lcia.org, indicates that "the LCIA is not linked to, or associated with, the government of any jurisdiction. It is a private, not-for-profit company, limited by guarantee and is entirely neutral and independent of any other organization." The website also states that the "Court" of the LCIA "is the body of eminent arbitrators that is the final arbiter for the proper application of the LCIA Rules. Its key functions are appointing Tribunals, determining challenges to arbitrators and controlling costs."

In the motion before this Court, Finserve seeks discovery from Petrosyn. It requests this Court to issue an Order of Judicial Assistance authorizing counsel to issue subpoenas to Petrosyan, compelling him to appear at a deposition and to produce documents for use in arbitration proceedings before LCIA and in such other proceedings in other jurisdictions as shall be appropriate.

The pertinent statute is 28 U.S.C. § 1782, which provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

The statute and case law establish three threshold requirements before a court can compel discovery under this statute: (1) the person from whom discovery is sought must reside in the district; (2) the request must be made by a foreign tribunal or an "interested person"; and (3) the evidence is to be used in a "foreign or international tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

Here, Petrosyan allegedly resides in this judicial district, and Finserve is an "interested person". (An interested person includes litigants, and also "plainly reaches beyond the universe of persons designated 'litigant'. *Intel*, 542 U.S. at 256). It is not necessary for an action to be pending, only that

it is "within reasonable contemplation." *Id*. at 259.[2] The main issue presented by this Application is whether the London Court of International Arbitration is a "foreign or international tribunal" as contemplated by the statute.

Prior to *Intel*, two circuits, the Second Circuit in *National Broad. Co. v. Bear Sterns & Co., Inc.*, 165 F.3d 184 (2d Cir. 1998) and the Fifth Circuit in *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880 (5th Cir. 1999), had held that Congress did not intend to extend Section 1782 to private international commercial arbitration. However, some courts that have addressed the issue after *Intel* hold that private arbitral tribunals are covered by the statute. *See, e.g., In re Application of Babcock Borsig AG*, 583 F.Supp.2d (D.Mass. 2008); *In re Hallmark Capital Corp.*, 534 F.Supp.2d 951 (D.Minn. 2007); *In re Roz Trading Ltd.*, 469 F.Supp.2d 1221 (N.D.Ga. 2006). These holdings are based on the broad language of the *Intel* case based on the statute's legislative history[3] and also on a citation within the case to Smit, International Litigation 1026-1027, and nn. 71, 73, stating, "[t]he term 'tribunal'. . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts". Other courts have analyzed the issue after *Intel* and found that the term "foreign or international tribunal" in Section 1782 does not include private arbitrations. *See, e.g., In Re an Arbitration in London, England between Norfolk Southern Corp., Norfolk Southern Railway Co., and General Security Insurance Co. and Ace Bermuda, Ltd.*, 626 F.Supp.2d 882 (N.D. Ill. 2009); *In re Application of Operadora DB Mexico, S.A. DE C.V.*,

---

[2] At the time this action was filed with this Court, no application had been made to the LCIA. Therefore, it is not clear whether a decision by the LCIA is "within reasonable contemplation."*See In re Application of Babcock Borsig AG*, note 8, which refers to the *Intel* court's finding that the proceedings were within reasonable contemplation where the applicant had filed an antitrust complaint and an investigation was ongoing.

[3] The statute was amended in 1964 to delete the words "in any judicial proceeding pending in any court in a foreign country" and to add the words "in a proceeding in a foreign or international tribunal." The Senate Report explained that Congress included the word "tribunal" to show that "assistance is not confined to proceedings before conventional courts," but also covers "administrative and quasi-judicial proceedings." *Intel*, 542 U.S. at 249, citing S.Rep. No. 1580, 88th Cong., 2d Sess., 7 (1964), U.S. Code Cong. & Admin. News 1964, pp. 3782, 3788. In 1996, the statute was amended to add the words, "including criminal investigations conducted before formal accusation." *Intel*, 542 U.S. at 249.

2009 WL 2423138, No. 6:09-cv-383-Orl-22GJK, Aug. 4, 2009 (M.D. Fla.); and *La Comision Ejecutiva Hidro-Elecctrica Del Rio Lempa v. El Paso Corp.*, 617 F. Supp.2d 481 (S.D. TX 2008).

The Court has very serious concerns with finding that private arbitration organizations are "foreign tribunals" under the statute. First, as noted by the court in *Norfolk Southern*, while the United States Supreme Court in *Intel* cited the commentator Smit with approval, it deleted part of Smit's definition of "tribunal", the part that included "all bodies exercising adjudicatory powers". This deletion could be interpreted to support a finding that private arbitration organizations are not "foreign tribunals." The court in *Intel* does not directly address the issue now before the Court and the quote from Smit does not solve this interpretational dilemma.

Additionally, as noted by the District Judges in *Norfolk* and *Operadora*, the entity involved in *Intel*, the DG Competition, conducts investigations into alleged violations of the competition laws of the European Union and decides whether to pursue the complaint. However, the decision not to pursue a complaint or a finding that a violation of the law has occurred is reviewable by the Court of First Instance and, ultimately, by the European Court of Justice. The *Intel* court emphasized the ultimate reviewability of the decisions by DG Competition. [The Court mentioned at least ten (10) times the availability of judicial review of the decision by the DG Competition.] "By contrast, private arbitrations are generally considered alternatives to, rather than precursors to, formal litigation. Indeed, it is common for arbitration provisions in private contracts to include a waiver of review by courts." *Norfolk Southern*, 626 F.Supp.2d at 886. In the case at bar, the LCIA Arbitration Rules[4] provide that decisions by the arbitrators are to be treated as administrative, and appeals to any judicial authority are generally taken to have been waived. Therefore, the Court questions whether the LCIA would be considered to be a "foreign tribunal" under the statute, as there appears there is no judicial review.

---

[4] The Rules are found at www.lcia.org.

Additionally, assuming without deciding that the initial factors have been met, then other factors must be considered in exercising this Court's discretion regarding whether to issue an order. These additional factors are: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requests should be scaled back to avoid an undue burden. *Intel*, 542 U.S. at 264. "The Senate Report observes in this regard that § 1782(a) 'leaves the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable.' S.Rep. No. 1580, at 7, U.S. Code Cong. & Admin. News 1964, pp. 3782, 3788." *Intel*, 542 U.S. at 260-261.

Applying these factors, the Court has concerns about granting the application at this juncture. In particular, this Court has been presented with no indication as to the "receptivity of the foreign government or the court or agency abroad to United States federal court assistance." As noted in *Babcock*, "the receptivity of the foreign tribunal is particularly important in light of the purposes of § 1782(a)." 583 F. Supp.2d at 241.

> As the Supreme Court has explained, the primary purpose of the statute is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Id*. (*Intel*) at 262. . . . [I]f there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for a district court to order discovery, especially where it involves substantial costs to the parties involved. In the present case, however, neither party has presented 'authoritative proof' regarding the receptivity of the ICC to the discovery materials requested. *Cf. Euromepa, S.A. v. R. Esmerian, Inc*, 51 F.3d 1095, 1099-100 (2d Cir. 1995)(holding that a district court should not determine receptivity under § 1782(a) simply by evaluating affidavits from international legal experts or engaging in its own inevitably superficial analysis of foreign law and procedures.)

Under the specific facts of the case at bar, I find that I should exercise my discretion by denying without prejudice the application by Finserve for discovery.

**AND IT IS SO ORDERED**.

October 20, 2011  
Florence, SC                                        s/ R. Bryan Harwell  
                                                    R. Bryan Harwell  
                                                    United States District Judge